**PHELPS et al., Appellees,**

v.

**FOWLER, Appellant.***

[Cite as *Phelps v. Fowler* (1995), 107 Ohio App.3d 263.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 68620.

Decided Nov. 13, 1995.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 75 Ohio St.3d 1452, 663 N.E.2d 332.

*Hildebrand, Williams & Farrell Co., L.P.A.,* and *Michael G. Polito,* for appellee Bobbie Phelps.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney and *Earl Williams,* Assistant Prosecuting Attorney, for appellee Arthello Smith and Dept. of Health and Human Services.

*Lester S. Potash,* for appellant.

JAMES M. PORTER, Judge.

Defendant-appellant Ralph Fowler, Jr. appeals from a judgment of the Juvenile Court which determined that he was the parent of Arthello Smith, thereby obliging him to pay for past child support. Appellant contends that the court erred in overruling the parties agreement to settle and dismiss the paternity suit prior to judgment, in failing to stay the proceedings while the putative father was in military service and in permitting the Cuyahoga County Prosecutor to represent all the plaintiffs. We find no error and affirm the judgment below in all respects.

This case originated on February 14, 1985, when the Cuyahoga County Prosecutor filed a complaint on behalf of plaintiff-appellee Arthello Smith and Bobbie Phelps, the mother of Arthello Smith (hereinafter "plaintiff"), with the Juvenile Court alleging that Smith was born on April 5, 1968, as a result of a sexual relationship between Phelps and defendant-appellant Ralph Fowler, Jr. Plaintiff sought adjudication that Smith is the child of Fowler and judgment for

Smith's past and future support. Smith was two months short of eighteen years of age and a fulltime student when the paternity suit was brought.

Fowler answered denying the allegations, asserting several affirmative defenses, and demanded a trial by jury. Fowler was represented by local counsel and commenced discovery. On May 20, 1986, Fowler filed a motion to stay all proceedings pursuant to the Soldiers' and Sailors' Civil Relief Act, Section 521, Title 50, U.S. Code. Fowler, a sergeant in the United States Army, was then stationed at Fort Eustis, Virginia and claimed that his military service materially affected his ability to conduct his defense. The court on August 1, 1985 overruled Fowler's motion, explaining that the "[d]efendant cannot avoid the legal process by hiding behind the Soldiers['] and Sailors['] Civil Relief Act."

On July 31, 1986, the prosecutor's office sought leave for the Cuyahoga County Department of Human Services ("DHS") to intervene as a party plaintiff. Defendant opposed the motion, asserting that the representation of all plaintiffs by the prosecutor's office would present the appearance of, if not an actual, conflict of interest. The trial court granted the motion to intervene pursuant to R.C. 3111.07(B), thereby allowing the prosecutor's office to represent all three plaintiffs—the mother, the child and DHS.

The record is replete with numerous and mostly unsuccessful efforts to move the case, primarily as a result of Fowler's absence on military service, and repeated continuances. Although a motion for genetic testing of the parties was granted on August 1, 1986, the tests were not taken until February 12, 1991, and the results were not filed in the juvenile court until May 17, 1991. The DNA test results disclosed a probability of Fowler's paternity of 99.99 percent. By this time, the child was twenty-three years old.

By notice mailed November 14, 1991, the trial court set trial for December 12, 1991. On November 27, 1991, Fowler filed a motion to continue the trial for two years supported by an affidavit which attached a copy of Fowler's military orders for a permanent change of station from Fort Eustis, Virginia to Fulda, Germany. On December 5, 1991, the trial court found the motion not to be well taken and denied same.

On December 12, 1991, counsel for defendant Fowler and the assistant county prosecutor assigned to the case discussed resolution of plaintiffs' complaint. The parties reached an agreement whereby Fowler would pay plaintiffs the sum of $5,000 for past support obligations, and all plaintiffs would agree to the dismissal of the complaint without an adjudication of paternity. Present and future support obligations were not in issue because the child had reached majority in 1986.

Counsel requested a continuance of the trial to effectuate the settlement agreement. The trial court denied the motion and ordered the case to proceed to trial on December 12, 1991. The parties waived a jury and plaintiffs presented the testimony of the mother and the results of the genetic testing. The trial court found Sgt. Fowler to be the father of Smith. The court directed the assistant county prosecutor to submit a journal entry to reflect the court's findings.

Prior to the submission of a judgment entry, counsel for Fowler sent to the assistant county prosecutor, as counsel for all the plaintiffs, (1) the settlement check in the amount of $5,000 made payable to the assistant county prosecutor and the mother, and (2) a stipulation for dismissal. The check was cashed, and on January 16, 1992, the prosecutor and defense counsel filed with the clerk of the juvenile court a joint stipulation for dismissal without prejudice, pursuant to Civ.R. 41(A)(2), with the right to refile in one year. In filing the stipulation for dismissal, it was the intention of all parties to have the matter dismissed without an adjudication of paternity.

On March 24, 1992, the trial court, *sua sponte*, filed a journal entry which overruled the stipulation for dismissal "for the reason that (1) on December 12, 1991 the Defendant waived trial by Jury and the court listened to evidence and testimony and made its adjudication; and (2) that the dismissal is not in the best interest of the child." The court ordered the prosecutor's office to submit a journal entry adjudicating Sgt. Fowler as the father of Smith. On April 10, 1992, the trial court entered its formal journal entry adjudicating defendant the father of Arthello Smith.

On May 18, 1992, Fowler filed a complaint with this court requesting writs of prohibition and mandamus for the trial court's failure to give effect to the stipulation for dismissal and for return of the $5,000. This court denied both writs in *State ex rel. Fowler v. Smith* (Nov. 23, 1992), Cuyahoga App. No. 63728, unreported, 1992 WL 356367, which decision was affirmed by the Supreme Court in *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 626 N.E.2d 950.

After the writs were denied, the trial court held hearings to determine the issue of past support claimed by the mother, the DHS having waived any rights to reimbursement for past care. Since the child was long past the age of eighteen, present and future care and support were not at issue. The court appointed new counsel for the mother. On January 27, 1995, following the mother and Fowler's failure to appear for a long-scheduled hearing, the court held that the prior $5,000 payment received by the mother constituted an accord and satisfaction between the mother and Fowler, thereby disposing of all issues in the case. Appellant timely filed his notice of appeal to this court. We will address defendant's assignments of error in the order asserted.

"I. The trial court erred in overruling the parties' agreement to settle and dismiss the litigation."

■ The Supreme Court of Ohio, as well as this court, has already determined that the trial court in this action had jurisdiction to proceed with the adjudication of Fowler's paternity notwithstanding the stipulation for dismissal. "Accordingly, since R.C. 3111.19 supersedes Civ.R. 41(A), Judge Smith retained jurisdiction over the parentage proceeding. Therefore, because Judge Smith's exercise of jurisdiction was authorized by law, *i.e.,* R.C. 3111.19, the court of appeals properly dismissed the prohibition action." *State ex rel. Fowler v. Smith* (1994), 68 Ohio St.3d 357, 361, 626 N.E.2d 950, 953. This assignment of error presents the limited issue of whether the trial court abused its discretion in not recognizing the stipulation for dismissal.

■ R.C. 3111.19 provides the juvenile court with the authority to allow the parties to a parentage action to compromise the claim under certain terms and conditions. R.C. 3111.19 states:

"After an action has been brought and before judgment, the alleged father and the mother, subject to the approval of the court, may compromise the action by an agreement in which the parent and child relationship is not determined but in which a specific economic obligation is undertaken by the alleged parent in favor of the child. In reviewing the obligation undertaken by the alleged parent, the court shall consider the interest of the child, the factors set forth in division (B)(3) of section 3113.215 of the Revised Code, and the probability of establishing the existence of a parent and child relationship in a trial."

Defendant now contends that R.C. 3111.19 does not apply to the facts of this case at all because "(1) the parentage action was not compromised, and (2) no economic obligation was undertaken in favor of the child." Defendant argues that since the stipulation for dismissal was "without prejudice and with the right to refile within one year," the paternity action was not compromised and no economic obligation was undertaken in favor of the child. Thus, defendant reasons that R.C. 3111.19 does not apply and cannot preempt the stipulation for dismissal. This is another way of saying that the trial court had no jurisdiction to proceed under R.C. 3111.19. However, we are foreclosed from entertaining this argument because it was raised and adjudicated in the prohibition proceeding in which defendant challenged the trial court's jurisdiction before this court and the Ohio Supreme Court. We are bound by the Supreme Court's determination that "Judge Smith's exercise of jurisdiction was authorized by law, *i.e.,* R.C. 3111.19 * * *." 68 Ohio St.3d at 361, 626 N.E.2d at 953.

We do not find that the trial court abused its discretion in overruling the stipulation for dismissal. The trial court was acting in the best interest of the

child in determining paternity and ordering the parties to address the issue of past child support.

As appellant points out, the factors before the court were that (1) all plaintiffs were represented by competent counsel; (2) negotiations had been on-going for years prior to reaching the agreement leading to the stipulation for dismissal; (3) Smith attained the age of majority in April 1986, and thus there was no issue of current or future support; and (4) the agreement permitted plaintiffs to refile the parentage action within one year of the stipulation for dismissal. Other factors before the court were that the case had been dragging on for years; both parties had requested and were granted numerous continuances; both parties failed to appear at numerous hearings; there was no evidence of the defendant's where-withal or ability to contribute to the past support; there was no basis for determining whether $5,000 was a reasonable or adequate settlement sum for eighteen years of a child's nonsupport; and that the settlement was at best inchoate because no money had been paid and defendant's whereabouts were unknown. Furthermore, the reservation of a right to refile in a year was illusory or mooted by the alleged settlement that was part of the voluntary dismissal. The court was well within its prerogatives in overruling the stipulation in the best interests of the child and taking evidence on the defendant's abilities to pay and the child's need for past support. We find no abuse of discretion on this record.

This assignment of error is overruled.

"II. The trial court erred in overruling defendant's motion to stay proceedings."

■ The Soldiers, and Sailors' Civil Relief Act, Section 521, Title 50, U.S.Code, provides the following:

"At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act [sections 501 to 591 of this Appendix], unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

The stay provided for in the Act does not automatically apply to all litigation involving military personnel on active duty. "It is within the trial court's discretion to grant or deny such a stay." *Nurse v. Portis* (1987), 36 Ohio App.3d 60, 61, 520 N.E.2d 1372, 1374; *Olsen v. Olsen* (1993), 87 Ohio App.3d 12, 15, 621 N.E.2d 830, 831–832.

The Act provides that upon motion of the affected party (the absent serviceman), the court must stay the proceedings unless, in the court's opinion, the ability of "the defendant to conduct his defense is not materially affected by reason of his military service."

On May 26, 1986, defendant filed a request to stay all proceedings pursuant to Section 521, Title 50, U.S.Code. Defendant was stationed at Fort Eustis, Virginia at the time of his request. Defendant wanted the trial delayed until the completion of his current tour of duty in 1990. In May 1986, the child was at the age of majority; however, past support and future support were still issues as he was a full-time student.

On consideration of the defendant's motion filed in 1986, the referee found as follows:

"This matter came on for hearing before me this 20th day of June, 1986. Complainant appeared with attorney Greg Kowalski of County Prosecutor's Office. Defendant failed to appear, in military service, stationed in Virginia. Attorney Lester Potash present for Defendant. Further Pre–Trial had with attorneys. Defendant's Motion, through counsel, to Stay Proceedings pursuant to 50 USC App. 521 heard and overruled for the reason that: Defendant has counsel representing him; Defendant filed an answer denying the allegations of the complaint; Defendant is stationed in the territorial United States, *i.e.*, Fort Eustis, Virginia; Defendant plans to make a career of the military and will remain the service until reaching twenty years or more as required to achieve full retirement which is sometime in the year 1990; Defendant can arrange leave to make himself available for trial and no information has been presented to indicate Defendant is under a military 'alert.' I further find that the Defendant has counsel to assist him in conducting his defense. Should Genetic Tests be sought, they can be accomplished taking in account Defendant's location or the Defendant can arrange leave to be in Cleveland for testing, or to attend hearing or Trial. The Defendant cannot avoid the legal process by hiding behind the Soldiers and Sailors Civil Relief Act. Counsel advised of procedure to perfect Jury Demand.

"I recommend that: the Motion to Stay be Overruled."

The court overruled the defendant's motion based on these findings.

On November 14, 1991, the trial court set a trial date of December 12, 1991. Defendant thus filed a second motion to stay the proceedings on November 27, 1991. Defendant's support affidavit asserted that he would be out of the country on the trial date, that he was transferred to Europe, and that he was expecting to be shipped out between December 10 and December 16, 1991. The affidavit disclosed no attempt to obtain leave, nor did it disclose that defendant spoke to his commanding officer or the judge advocate general officer concerning leave.

The record further reveals that from the inception of the case until trial, the court granted ten continuances and tolerated numerous nonappearances by both parties at scheduled hearings.

In *Boone v. Lightner* (1943), 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. 1587, the United States Supreme Court held: "The Act itself cannot be construed so as to require a continuance on a mere showing that the defendant is in the military service." The serviceman must show that he is unavailable for trial and that his rights would be materially affected. *Boone, supra.*

Defendant cannot show he was unavailable when, as here, he failed to present evidence that leave was requested. *Power v. Power* (Tex.App.1986), 720 S.W.2d 683, 685; *Allen v. Howard* (1988), 185 Ga.App. 758, 758–759, 365 S.E.2d 546, 547; *Hall v. Hall* (Jan. 16, 1992), Knox App. No. 91–CA–21, unreported, 1992 WL 15991 ("he failed to show that he was unable to come home on leave or even that he requested to his commanding officer a hardship leave to attend the hearings").

We cannot say on the record that the court abused its discretion under the Act in proceeding with trial.

This assignment of error is overruled.

"III. The trial court erred in permitting the representation of all plaintiffs by the county prosecutor's office."

In this assignment of error defendant argues that the court should not have permitted the prosecutor's office to represent all the plaintiffs for purposes of past support because there may have been a conflict of interest between the mother, the child and DHS. Defendant does not argue that the interests of each party was not properly represented. DHS, represented by the prosecutor's office, moved to intervene on July 31, 1986 to protect its interests to reimbursement for past support if defendant was determined to be the father. See R.C. 3111.07(B). Defendant opposed the intervention on grounds, *inter alia*, "that there appears to be (even if there does not exist in fact) a conflict of interest by and between the present plaintiffs and the petitioning intervenor." Although defendant did not articulate in his opposition papers the reasons for the potential conflict, it may be inferred that DHS, the mother and child might have had competing interests to reimbursement for past support. The court granted the intervention on August 22, 1986. An Assignment of Support Rights from Bobbie Phelps to the Cuyahoga County Welfare Department (predecessor to DHS) was filed in the action on February 14, 1985 with the complaint. There can be no question that DHS had a right to intervene under R.C. 3111.07(B).

Once DHS waived any right to the $5,000, the court appointed new counsel for the mother and the matter proceeded to conclusion on the accord and satisfaction.

We fail to see how the defendant was materially prejudiced by the convenient representation of the plaintiffs by the prosecutor's office. All plaintiffs arguably had interests in common in collecting past support from the defendant. Defendant speculates "[h]ad other counsel been involved * * * the court may have found that the agreement and dismissal [were] in the best interests of and for all the parties, and the matter would have terminated in 1991 * * *." The issues in this case, however, revolved around the best interests of the child, not what was best for the putative father or mother.

Defendant is arguing that there existed a conflict between the three plaintiffs and their attorney. Defendant, however, does not have standing to complain of any conflict. "As a general rule, a stranger to the attorney-client relationship lacks standing to complain of a conflict of interest in that relationship." *Morgan v. N. Coast Cable Co.* (1992), 63 Ohio St.3d 156, 586 N.E.2d 88, syllabus. If the representation was not a problem for plaintiffs, it was not a problem for defendant.

This assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

HARPER, P.J., and NAHRA, J., concur.